**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DR. BARBARA SOLTES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: |
| vs. ) | |
| ) | Jury Trial Demanded |
| RUSH UNIVERSITY MEDICAL CENTER, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**COMPLAINT**

Plaintiff, Dr. Barbara Soltes ("Dr. Soltes" or "Plaintiff"), by her attorneys, Peter M. Katsaros, Gillian G. Lindsay, and Rashmi D. Shivnani, of Hahn Loeser & Parks LLP, complains against Defendant, Rush University Medical Center ("Rush") as follows:

**Nature of Action**

1.      This is an action for compensatory, punitive, and liquidated damages, together with attorney's fees and costs, sustained by Dr. Soltes as a result of Rush's bad acts, including, a campaign of discrimination based upon age, creating a hostile work environment, defaming her and her practice, casting her in a false light to ruin her reputation and gain a competitive advantage, and interfering with her existing and prospective business relations.

2.      Dr. Soltes has worked at Rush as a reproductive endocrinologist for over 20 years. She is one of the nation's leading gynecologists with a subspecialty in Gynecological Endocrinology, and a full-tenured Professor in Rush's Department of Obstetrics and Gynecology.

3.      In 2016, the dean of Rush Medical College, Dean Ranga Krishnan ("Dr. Krishnan") recruited Dr. Soltes to leave her private practice to build Rush's Midlife Center and serve as its Medical Director, promising Dr. Soltes *carte blanche* with respect to the leadership of the Midlife

13776323.1

Center. Dr. Soltes opened the Midlife Center in July 2017 and led a team of ten women's health specialists to provide comprehensive and cutting-edge care, bringing nearly 1,000 of her own private practice patients with her.

4. After Dr. Cynthia Brincat ("Dr. Brincat") joined Rush, she led a campaign of harassment and business interference against Dr. Soltes, by, *inter alia*: denying COVID-19 accommodations afforded to other employees; not providing the contracted-for facilities for Dr. Soltes's continued professional success; coordinating Dr. Soltes's schedule in a manner that deprived her patients of access and care; misrepresenting Dr. Soltes's research as abandoned; misrepresenting Dr. Soltes's professional commitment to her research to the grant donor; depriving Dr. Soltes of her contractual right to process; and after Dr. Soltes's employment at Rush ended, representing to her patients—including patients she brought to Rush from her private practice— that Dr. Soltes encourages them to find other care at Rush.

5. As a result of the acts described herein, Dr. Soltes has suffered and will continue to suffer severe emotional, reputational, and financial injury.

**Parties**

6. Dr. Soltes, 62, is one of the nation's leading gynecologists with a subspecialty in Gynecological Endocrinology. She is a full-tenured Professor in Rush's Department of Obstetrics and Gynecology. She is regularly recognized as a "Top Doctor for Women" by Chicago magazine, is known locally, nationally, and internationally for her clinical research on women's health, and has served as the principal investigator in a wide range of clinical trials. In 2019, Dr. Soltes was named the North American Menopause Practitioner of the Year.

7. Upon information and belief, Rush is an Illinois not-for-profit corporation with its principal place of business at 1700 W. Van Buren St, Suite 301, Chicago, IL 60612.

13776323.1

**Jurisdiction and Venue**

8.      This Court has jurisdiction over Counts I through IV under 28 U.S.C. § 1331, because the claims arise under the laws of the United States.

9.      This Court has jurisdiction over Counts V through X under 28 U.S.C. § 1367 because Counts V through X are part of the same case or controversy as Counts I through IV.

10.      Venue is proper in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b)(2), because all significant events giving rise to the claims occurred in the Northern District of Illinois, Eastern Division.

11.      Venue is also proper in the Northern District of Illinois, Eastern Division because Defendants do business and have employees located within this judicial district. 28 U.S.C. § 1391(c)(2).

**Factual Allegations**

***Dr. Soltes' Background***

12.      Dr. Soltes attended Mount Sinai School of Medicine, completed a fellowship in Reproductive Endo/Infertility at Rush University Medical Center, and did her residency in Obstetrics & Gynecology through the State University of New York.

13.      In 1990, Dr. Soltes joined Rush University's Medical Center's Faculty.

14.      Dr. Soltes has worked as a reproductive endocrinologist for over 30 years at Rush.

15.      Dr. Soltes focuses on the complexity of hormones throughout a woman's lifetime.

16.      Research plays a vital role in Dr. Soltes' practice.

17.      Through research and clinical studies, Dr. Soltes maintains a bird's eye view of the future of women's health, which allows her to give patients hope with respect to what care is available and what the future holds for them.

13776323.1

18.     From 1996 to 2016, Dr. Soltes ran a private practice from two locations devoted to women's midlife health and medical needs.

19.     Dr. Soltes' practice focused on the complexity of hormones, differentiating between normal and abnormal hormonal patterns and balancing hormones as effectively and efficiently as possible.

20.     In 2016, the dean of Rush Medical College, Dean Ranga Krishnan ("Dr. Krishnan") recruited Dr. Soltes to leave her private practice to build Rush's Midlife Center and serve as its Medical Director, promising Dr. Soltes *carte blanche* with respect to the leadership of the Midlife Center.

21.     On August 18, 2016, Dr. Soltes signed her offer letter with Rush, detailing her appointment as an Associate Professor in the Department of Obstetrics and Gynecology and the Director of the Midlife Center. A true and accurate copy of this offer letter is attached hereto as **Exhibit A**.

22.     The letter also assured the allocation of space for the Midlife Center. *Id*. The terms set forth in the letter superseded the terms and conditions contained in Rush's Faculty Employment Agreement. *Id*. at page 1, third paragraph. *Id*.

23.     Dr. Soltes' offer was contingent on "continued faculty appointment to Rush Medical College." Ex. A, 1.

24.     On December 2, 2016, Dr. Soltes and Rush executed an employment contract, the Faculty Employment Agreement ("FEA"), which rolled over and renewed each year from 2016 through 2020. A true and accurate copy of this agreement is attached hereto as **Exhibit B.**

25.     When Dr. Soltes became a Rush employee in 2016, she brought nearly 1,000 of her private-practice patients with her to continue their care at Rush.

4

26. Dr. Soltes opened the Midlife Center in July 2017 and led a team of ten women's health specialists to provide comprehensive and cutting-edge care.

27. The Midlife Center was one of only five multidisciplinary centers in the U.S. devoted to caring for women over 40 years old.

28. From 2017 through 2019, the Midlife Center experienced a steady rise in calls, appointments, and financial and business growth.

29. At all times, Dr. Soltes was qualified to be the Director of the Midlife Center and teach residents and students.

30. She consistently received positive peer evaluations and patient feedback during her employment at Rush through June 30, 2022.

### Rush's Discrimination

31. Dr. Brincat joined Rush at the beginning of 2018.

32. In November 2018, Dr. Brincat was promoted to Vice Chair of the Department of Obstetrics and Gynecology.

33. In the same month, Dr. Brincat sent letters to Dr. Soltes and another Midlife-Center doctor, Dr. Mary Farhi ("Dr. Farhi"), alleging disruptive behavior in the Midlife Center.

34. This shocked Dr. Soltes, as she never had a complaint filed against her in her 30-year tenure at Rush.

35. Dr. Soltes and Dr. Farhi met with Dr. Brincat to discuss the alleged disruptive behavior.

36. Dr. Brincat refused to provide any details and dismissed the complaint.

37. On or around July 2019, Dr. Brincat began moving Dr. Soltes' schedule between three different locations.

13776323.1

38. Several patients complained to Rush leadership about the lack of access to Dr. Soltes due to scheduling issues.

39. In late 2019, one of Dr. Soltes' patients personally funded a $1.75 million philanthropic menopause research grant so Dr. Soltes could continue to improve and advance care for women over 40.

40. Rush guaranteed space and facilities for Dr. Soltes' grant research.

41. In 2020, Dr. Brincat was appointed Chair of the Department of Obstetrics and Gynecology.

42. Soon after Dr. Brincat's appointment as Chair, the COVID-19 virus surged.

43. Dr. Soltes was scheduled to take the Obstetrics & Gynecology Boards, but Boards were postponed due to the COVID pandemic.

44. At the time, Dr. Soltes was a part-time physician at Rush, who maintained an outside practice.

45. She was also over the age of 60—at high risk for COVID-19 infection and complications.

46. Rush denied Dr. Soltes accommodations it afforded to other younger Gynecologic Oncology physicians, including but not limited to Doctors Summer Dewdney, Amina Ahmed, Andras Ladanyi and Jean-Marie Stephen.

47. For example, Dr. Soltes was: (a) not allowed to isolate and perform telehealth visits, (b) assigned to a rotation in which she was forced to engage in direct contact with patients potentially infected with COVID-19, and (c) assigned to labor and delivery for the first time in 26 years.

48. Dr. Soltes diligently complied with her obligations, including working in the

Obstetrics clinic, and the Labor and Delivery division.

49. She worked weekends, and always took emergency phone calls as part of the on-call schedule.

50. In June 2020, Dr. Soltes secured tenure and a full-time faculty position.

51. Rush, however, refused to adjust her salary to the standard rate of a full-time tenured professor; instead, Rush paid Dr. Soltes as an Associate Professor.

52. Dr. Soltes remained committed to her work and trusted Rush's promises to support her research and grant.

53. Dr. Soltes continued treating her patients, resumed limited research, and worked to find space and make other logistical arrangements to start her grant research.

54. In February 2021, Rush, via Dr. Brincat, notified Dr. Soltes that the Department of Obstetrics & Gynecology and Rush did not have infrastructure to complete the grant research.

55. On February 15, 2021, Rush sent Dr. Soltes a notice of non-renewal of the faculty employment agreement. A true and accurate copy of this non-renewal notice is attached hereto as **Exhibit C**.

56. Rush allowed Dr. Soltes to "maintain" her "Rush University faculty appointment." Ex. C.

57. On information and belief, in April 2021, Rush incorrectly informed the Obstetrics & Gynecology Boards that individuals on Dr. Soltes' patient list were not hers, resulting in Dr. Soltes' failure of the Boards' examination.

58. In May 2021, without any discussion with Dr. Soltes or the grant donor, Dr. Brincat transferred Dr. Soltes' research grant to the Department of Internal Medicine.

59. In or around May 2021, Rush advised Dr. Soltes that the donor approved these

13776323.1

changes.

60.     Upon information and belief, in or around May 2021, the donor had not approved the changes.

61.     Upon information and belief, in or around May 2021, Rush told the donor that Dr. Soltes approved these changes.

62.     Dr. Soltes had not approved the changes.

63.     In June 2021, the Department of Obstetrics & Gynecology hired a Research Investigator, Dr. Sadia Haider, to serve as the Vice Chair of Obstetrics & Gynecology Research.

64.     Dr. Haider is younger and less experienced than Dr. Soltes.

65.     Rush did not transfer Dr. Soltes' research back to the department of Obstetrics & Gynecology.

66.     Instead, the Chair of the Department of Internal Medicine offered Dr. Soltes a "scientist" position.

67.     On June 30, 2021:

   a. the Chair of Internal Medicine withdrew the offer;

   b. Dr. Soltes' employment contract was not renewed and expired;

   c. Rush security escorted Dr. Soltes out of the building; and,

   d. Rush improperly terminated Dr. Soltes' access to her email and research portal in violation of her tenure.

68.     Rush's actions resulted in the loss and destruction of significant data.

69.     Rush falsely designated Dr. Soltes' research as "Abandoned."

70.     Rush allowed another young physician, Dr. Anne Sammarco (30s), to continue her research after terminating Dr. Soltes' research.

71.     Upon information and belief, Rush advised Dr. Soltes' patient who donated the

8

13776323.1

$1.75 million grant that she could no longer communicate with Dr. Soltes.

72.     On or around July 10, 2021, Rush disseminated a forged letter—claiming to be written and signed by Dr. Soltes—to Dr. Soltes' patients. A copy of the July 10, 2021 correspondence is attached hereto as **Exhibit D**.

73.     Rush wrote:

> I am writing to inform you that as of July 1, 2021, I am no longer practicing at Rush University Medical Center.
>
> I encourage you to continue your care at Rush. To schedule an appointment with another OB-GYN provider, please visit Rush, use our MyRush mobile application or call (888) 352-7874.
>
> To learn about other Rush providers, visit Doctors. At this site, you'll find information on each provider's background, areas of expertise and practice locations.
>
> Thank you for allowing me to participate in your care over the past few years. It was my pleasure and an honor.
>
> With gratitude,
>
> Barbara Soltes, MD

Ex. D.

74.     Dr. Soltes did not write the July 10, 2021 letter.

75.     Dr. Soltes did not sign the July 10, 2021 letter.

76.     Dr. Soltes did not authorize anyone to sign the July 10, 2021 letter on her behalf.

77.     Dr. Soltes did not approve the July 10, 2021 letter before it was sent.

78.     Dr. Soltes did not review the July 10, 2021 letter before it was sent.

79.     Rush sent the July 10, 2021 letter to every patient Dr. Soltes had seen in her years of service to Rush.

80.     Rush continued to allow patients to schedule appointments with Dr. Soltes.

81.     When those patients arrived for their appointments, they were told that Dr. Soltes

9

13776323.1

was no longer with Rush and directed to another Rush physician.

82. Many of these patients had been seeing Dr. Soltes for many years.

83. Many of these patients had relationships with Dr. Soltes that predated Dr. Soltes' move to Rush to form the Mid-Life Center in 2016.

84. Some of these patients suffered from serious thyroid disease, hormone disorders, osteoporosis, etc.

85. None of the alternative doctors at Rush were subspecialists in Gynecology Endocrinology or have Dr. Soltes' experience.

86. These patients needed to see Dr. Soltes, the only Rush OB-GYN with a specialty in Gynecological Endocrinology, to ensure uninterrupted care and continued access to prescription medications.

87. In addition, Rush continued to advertise the research grant creating confusion and interfering with Dr. Soltes' relationships with patients and prospective patients.

88. Dr. Soltes sent a cease-and-desist letter.

89. Rush did not respond to the cease-and-desist letter.

90. During Dr. Brincat's term as Chair, other older Rush OB-GYN physicians were urged to retire since they would not have their employment contracts renewed, including Dr. Bruce Rosenzweig, Dr. Ed Linn, Dr. John Weitzner, Dr. Ramkrishna Mehendale, Dr. Xavier Pombar, Dr. Cheryl Wolfe, Dr. Michelle Albovias, Dr. Shawn Davies, Dr. Thaddeus Waters and Dr. Ruth Dubyel.

91. As a result of the discriminatory employment practices of Rush University Medical Center senior leadership and Dr. Cynthia Brincat, the average age of the OB-GYN physicians at Rush in 2022 is 38 years of age and includes the following doctors: Allison Chen-McCracken,

13776323.1

Robin Drake, Marly Francois, Laura Laursen, Azra Sadikovic, Madeline Stark, Stacey Sudholt, Kristin Jacobs, Fareesa Khan, Katrina Birch, Kelly Davis, Meghan Klavans, Anna McCormick, Michael Roche, Christina Panton, Elizabeth Yepez and Sloane York.

92.     Upon information and belief, other medical professionals have also left Rush due to discriminatory practices and treatment based on age perpetuated by Rush University Medical Center senior administrators. These physicians include, but are not limited to, Dr. Katherine Griem, Dr. Jacob Rotmensch, Dr. Michael Tharp, Dr. William Schwer, Dr. Howard Strassner and Dr. David Caldarelli.

93.     Rush caused Dr. Soltes severe emotional, reputational, and financial harm.

### *Compliance with Administrative Procedures*

94.     On September 7, 2021, Dr. Soltes submitted nine grievances to Dr. Brincat, as Chairperson of the Department of Obstetrics and Gynecology, pursuant to the Policies and Procedures for the Faculty and Student of Rush Medical College for the Rules governance Section 3(b) Faculty Grievance Procedure.

95.     The grievances include, but are not limited to:

a.  The non-renewal of employment as of July 1, 2021, which was instigated by Dr. Brincat;

b.  The forged letter disseminated to Dr. Soltes' patients without her knowledge or permission, encouraging her patients to continue their care with other physicians at Rush. Ex. D.

c.  The direction for Dr. Soltes to surrender her keys, public escort off the Rush campus, and loss of access to emails and research portals, even though she remained a member of the Medical Staff at Rush;

d.  Termination of the Genetic Evaluation and Modification Lifestyle to Improve Female Life Expectancy study ("GEMLIFE Study");

e.  Dr. Brincat's direction to have no contact with the research grant donor;

f.  Loss of $140,000.00 in annual compensation as the Principal Investigator of the

13776323.1

GEMLIFE Study;

g. Dissemination of false statements in the Master Project Summary Workspace that the GEMLIFE Study had been abandoned, as the PI is no longer at Rush and that "the College of Nursing terminated the Study;"

h. While the Rush website advertises the GEMLIFE Study as active; and,

i. The reputational harm to Dr. Soltes as a researcher and a physician because of the non-renewal of her Faculty Employment Agreement for discriminatory reasons; the termination and false information disseminated regarding the GEMLIFE Study; the communications between Rush and the grant donor; and the disparaging and defamatory communications with Dr. Soltes' patients and the research community.

96. Dr. Brincat responded dismissing each of Dr. Soltes' grievances.

97. Dr. Soltes also voiced her complaints of discrimination to Rush's Office of Intuitional Equity.

98. On September 13, 2021, Dr. Soltes filed her charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), which automatically filed a charge with the Illinois Department of Human Rights ("IDHR").

99. Dr. Soltes received a right to sue letter from the EEOC on June 16, 2022. A copy of the EEOC Charge and Right to Sue Letter are attached hereto as **Exhibit E**.

## COUNT I
## ADEA VIOLATION- DISCRIMINATION

100. Dr. Soltes incorporates paragraphs 1 through 99 as though fully stated herein.

101. At all times material to this Complaint, Rush was an employer within the meaning of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and employed more than the statutory minimum of twenty (20) employees.

102. At all relevant times, Dr. Soltes was over forty (40) years old.

103. Rush discriminated against Dr. Soltes on the basis of her age (40+), in violation of her rights under ADEA.

12

13776323.1

104. At all times, Dr. Soltes performed her job functions sufficiently.

105. Similarly-situated younger employees at Rush did not receive the same treatment as Dr. Soltes, and received better treatment than Dr. Soltes.

106. Rush's violations of Dr. Soltes' rights under the ADEA caused her significant emotional, monetary, and reputational harm.

107. Rush's violations of Dr. Soltes' rights under the ADEA were willful.

WHEREFORE, Plaintiff, Dr. Barbara Soltes, respectfully requests that this Court, after a jury trial, enter judgment in her favor and against Defendant Rush University Medical Center, award damages equal to:

      (i)     Lost wages and benefits, including all back pay and front pay lost as a result of Rush's discrimination;

      (ii)    Liquidated damages;

      (iii)   Attorneys' fees and costs; and

      (iv)   Such other and further relief as this Honorable Court deems just and proper under the circumstances.

## COUNT II
## ADEA VIOLATION- HOSTILE WORK ENVIRONMENT

108. Dr. Soltes incorporates paragraphs 1 through 99 as though fully stated herein.

109. At all times material to this Complaint, Rush was an employer within the meaning of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and employed more than the statutory minimum of twenty (20) employees.

110. At all relevant times, Dr. Soltes was over forty (40) years old.

111. Rush subjected Dr. Soltes to a workplace environment which was subjectively and objectively offensive on the basis of her age (40+), in violation of her rights under ADEA.

112. Rush's discriminatory conduct was severe and pervasive.

13

113.    Rush's violations altered Dr. Soltes' workplace environment.

114.    At all times, Dr. Soltes performed her job functions sufficiently.

115.    Similarly-situated younger employees at Rush did not receive the same treatment as Dr. Soltes, and received better treatment than Dr. Soltes.

116.    Rush's violations of Dr. Soltes' rights under the ADEA caused her significant emotional, monetary, and reputational harm.

117.    Rush leadership knew or should have known about the discrimination.

118.    Rush unreasonably failed to take remedial action for the discriminatory conduct.

119.    Rush's violations of Dr. Soltes' rights under the ADEA were willful.

WHEREFORE, Plaintiff, Dr. Barbara Soltes, respectfully requests that this Court, after a jury trial, enter judgment in her favor and against Defendant Rush University Medical Center, award damages equal to:

(i)     Lost wages and benefits, including all back pay and front pay lost as a result of Rush's creation of a hostile work environment;

(ii)    Liquidated damages;

(iii)   Attorneys' fees and costs; and

(iv)    Such other and further relief as this Honorable Court deems just and proper under the circumstances.

## COUNT III
## IHRA VIOLATION- DISCRIMINATION

120.    Dr. Soltes incorporates Paraphs 1 through 99 as if fully restated herein.

121.    At all times material to this Complaint, Rush was an employer within the meaning of the Illinois Human Rights Act, §2-101(B)(1)(a) and employed more than the statutory minimum of fifteen (15) employees.

122.    At all relevant times, Dr. Soltes was over forty (40) years old.

14

13776323.1

123. Rush discriminated against Dr. Soltes on the basis of her age in violation of the IHRA.

124. At all times, Dr. Soltes performed her job functions sufficiently.

125. Similarly-situated younger employees at Rush did not receive the same treatment as Dr. Soltes, and received better treatment than Dr. Soltes.

126. Rush's violation of the IHRA caused Dr. Soltes significant emotional, reputational, and monetary harm.

127. Rush's violations of the IHRA were willful.

WHEREFORE, Plaintiff, Dr. Barbara Soltes, respectfully requests that this Court, after a jury trial, enter judgment in her favor and against Defendant Rush University Medical Center, and award damages equal to:

    (i)     Lost wages and benefits, including all back pay and front pay lost as a result of Rush's discrimination;

    (ii)    Compensatory and actual damages;

    (iii)   Punitive damages;

    (iv)   Attorneys' fees and costs; and

    (v)    Such other and further relief as this Court deems just and proper under the circumstances.

## COUNT IV
## IHRA VIOLATION- HOSTILE WORK ENVIRONMENT

128. Dr. Soltes incorporates paragraphs 1 through 99 as though fully stated herein.

129. At all times material to this Complaint, Rush was an employer within the meaning of the Illinois Human Rights Act, §2-101(B)(1)(a) and employed more than the statutory minimum of fifteen (15) employees.

130. At all relevant times, Dr. Soltes was over forty (40) years old.

15

13776323.1

131. Rush subjected Dr. Soltes to a workplace environment which was subjectively and objectively offensive on the basis of her age (40+), in violation of her rights under IHRA.

132. Rush's discriminatory conduct was severe and pervasive.

133. Rush violations altered Dr. Soltes's workplace environment.

134. At all times, Dr. Soltes performed her job functions sufficiently.

135. Similarly-situated younger employees at Rush did not receive the same treatment as Dr. Soltes, and received better treatment than Dr. Soltes.

136. Rush's violations of Dr. Soltes's rights under the IHRA caused her significant emotional and monetary harm.

137. Rush leadership knew or should have known about the discrimination.

138. Rush unreasonably failed to take remedial action for the discriminatory conduct.

139. Rush's violations of Dr. Soltes' rights under the IHRA were willful.

WHEREFORE, Plaintiff, Dr. Barbara Soltes, respectfully requests that this Court, after a jury trial, enter judgment in her favor and against Defendant Rush University Medical Center, and award damages equal to:

(i) Lost wages and benefits, including all back pay and front pay lost as a result of Rush's discrimination;

(ii) Compensatory and actual damages, including emotional harm and mental suffering;

(iii) Punitive damages;

(iv) Attorneys' fees and costs; and

(v) Such other and further relief as this Court deems just and proper under the circumstances.

## COUNT V
## BREACH OF CONTRACT

140. Dr. Soltes incorporates paragraphs 1 through 99 as though fully stated herein.

16

141. Valid and enforceable contracts exist between Dr. Stoles and Rush.

142. Dr. Stoles performed her obligations under those contracts.

143. Rush breached the contracts as set forth above, including but not limited to:

   a. Failing to "allocat[e] appropriate space . . . for the Midlife Center" as outlined in the terms and conditions Offer Letter, signed on August 16, 2016;

   b. The non-renewal of employment as of July 1, 2021, which was instigated by Dr. Brincat;

   c. The forged letter disseminated to Dr. Soltes' patients without her knowledge or permission, encouraging her patients to continue their care with other physicians at Rush;

   d. The improper treatments of Dr. Soltes by demanding she surrender her keys, publicly escorting her off the Rush campus, and denying her access to emails and research portals, even though she remained a member of the Medical Staff at Rush;

   e. Termination of the GEMLIFE Study;

   f. Dr. Brincat's direction to have no contact with the research grant donor;

   g. Loss of $140,000.00 in annual compensation as the Principal Investigator of the GEMLIFE Study;

   h. Dissemination of false statements in the Master Project Summary Workspace that the GEMLIFE Study had been abandoned as the PI is no longer at Rush and that "the College of Nursing terminated the Study;"

   i. Falsely advertising the GEMLIFE Study as active;

   j. Falsely informing the Obstetrics & Gynecology Boards that patients on Dr. Soltes's list were not in fact hers, resulting in the Dr. Soltes's failure in the Boards examination; and,

   k. The unprofessional and improper treatment of a Medical Staff and Faculty Member that caused reputational harm to Dr. Soltes as a researcher and a physician.

144. Rush's breaches were material.

145. Dr. Stoles suffered damages as a result of Rush's breaches of contracts.

13776323.1

WHEREFORE, Plaintiff, Dr. Barbara Soltes, respectfully requests that this Court, after a jury trial, enter judgment in her favor and against Defendant Rush University Medical Center, and award damages equal to:

(i)     Compensatory damages;

(ii)    Consequential damages; and,

(iii)    Such other and further relief as this Court deems just and proper under the circumstances.

## COUNT VI
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

146.    Dr. Soltes incorporates paragraphs 1 through 99 as though fully stated herein.

147.    Dr. Soltes had a reasonable expectation of continuing her business providing care to her patients at Rush that she served in her private practice prior to coming to Rush.

148.    Rush was aware of that expectation at all relevant times.

149.    Rush intentionally and without justification interfered with the relationship, by:

(i.)    Switching Dr Soltes' shifts several times, making it difficult for her patients to continue critical care with her;

(ii.)    Falsely informing the Obstetrics & Gynecology Boards that patients on Dr. Soltes' list were not in fact hers, resulting in the Dr. Soltes' failure in the Boards examination;

(iii.)    Sending a forged notice to her patients encouraging them to find other care at Rush after she was removed as a physician; and

(iv.)    Falsely reporting that Dr. Soltes' research was abandoned, while Rush continued to advertise the research grant creating confusion and interfering with Dr. Soltes' relationships with patients, prospective patients and a philanthropic donor of a research grant of $1.75 million.

150.    Due to Rush's interference, Dr. Soltes lost business income, patients, reputation and the use of the $1.75 prestigious research grant she had secured.

151.    Due to Rush's interference, Dr. Soltes lost business, patients, and reputation from prospective new patients.

13776323.1

152. Rush's interference caused Dr. Soltes significant financial, reputational, and emotional harm.

153. Upon information and belief, Rush interfered in such a manner willfully or with gross negligence.

WHEREFORE, Plaintiff, Dr. Barbara Soltes, respectfully requests that this Court, after a jury trial, enter judgment in her favor and against Defendant Rush University Medical Center, and award damages equal to:

    (i)    Compensatory damages, including but not limited to, loss of benefits, lost patients, out-of-pocket damages, lost profits, a decline in expected profit, and actual harm to the reputation.

    (ii)    Punitive damages; and

    (iii)    Such other and further relief as this Court deems just and proper under the circumstances.

## COUNT VII
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

154. Dr. Soltes incorporates paragraphs 1 through 99 as though fully stated herein.

155. Dr. Soltes had a reasonable expectation of continuing her business with the research grant provided by her longtime patient.

156. Rush was aware of that expectation at all relevant times.

157. Rush intentionally and without justification interfered with the relationship, by:

    (i.)    Transferring the grant to a different department without any discussion with the donor or Dr. Soltes;

    (ii.)    Falsely reporting to the donor that Dr. Soltes approved the transfer in subsection (i);

    (iii.)    Falsely reporting to Dr. Soltes that the donor approved the transfer in subsection (i);

    (iv.)    Falsely publishing on the defendant's website that Dr. Soltes' research was 'abandoned'; and

13776323.1

(v.) Upon information and belief, communicating other falsehoods to the donor, thereby causing a cessation of communications between the donor and Dr. Soltes.

158. Due to Rush's interference, Dr. Soltes lost business, patients, and reputation from the loss of the research grant.

159. Due to Rush's interference, Dr. Soltes lost business, patients, and reputation from existing and prospective new patients.

160. Rush's interference caused Dr. Soltes significant emotional, monetary, and reputational harm.

161. Upon information and belief, Rush interfered in such a manner willfully or with gross negligence.

WHEREFORE, Plaintiff, Dr. Barbara Soltes, respectfully requests that this Court, after a jury trial, enter judgment in her favor and against Defendant Rush University Medical Center, and award damages equal to:

(i) Compensatory damages, including but not limited to, loss of benefits, lost patients, out-of-pocket damages, lost profits, a decline in expected profit, and actual harm to the reputation.

(ii) Punitive damages; and

(iii) Such other and further relief as this Court deems just and proper under the circumstances.

## COUNT VIII
## DEFAMATION *PER SE*

162. Dr. Soltes incorporates paragraphs 1 through 99 as though fully stated herein.

163. Rush falsely communicated to Dr. Soltes' $1.75 million research grant donor and to the public that Dr. Soltes had abandoned her research.

164. Rush falsely communicated to Dr. Soltes' grant donor that she approved the grant funds being transferred to another department.

20

13776323.1

165. Rush falsely communicated to Dr. Soltes' patients after June 30, 2021 that she encouraged them to seek medical care at Rush rather than follow her to her private practice, including via the July 10, 2021 letter. Ex. D.

166. Due to Rush's falsehoods, Dr. Soltes lost business, patients, and reputation.

167. Rush's falsehoods caused Dr. Soltes significant emotional, monetary, and reputational harm.

168. Upon information and belief, Rush made the falsehoods willfully.

WHEREFORE, Plaintiff, Dr. Barbara Soltes, respectfully requests that this Court, after a jury trial, enter judgment in her favor and against Defendant Rush University Medical Center, and award damages equal to:

      (i)     Compensatory damages;

      (ii)    Punitive damages;

      (iii)   Injunctive relief; and

      (iv)   Such other and further relief as this Court deems just and proper under the circumstances.

## COUNT IX
## DEFAMATION *PER QUOD*

169. Dr. Soltes incorporates paragraphs 1 through 99 as though fully stated herein.

170. Rush falsely communicated to Dr. Soltes' $1.75 million research grant donor and to the public that Dr. Soltes had abandoned her research.

171. Rush falsely communicated to Dr. Soltes' grant donor that she approved the grant funds being transferred to another department.

172. Rush falsely communicated to Dr. Soltes' patients after June 30, 2021 that she encouraged them to seek medical care at Rush rather than follow her to her private practice, including via the July 10, 2021 letter. Ex. D.

13776323.1

173.    Due to Rush's falsehoods, Dr. Soltes lost business, patients, and reputation.

174.    Rush's falsehoods caused Dr. Soltes significant emotional, monetary, and reputational harm.

175.    Upon information and belief, Rush made the falsehoods willfully.

WHEREFORE, Plaintiff, Dr. Barbara Soltes, respectfully requests that this Court, after a jury trial, enter judgment in her favor and against Defendant Rush University Medical Center, and award damages equal to:

(i)     Compensatory damages;

(ii)    Punitive damages;

(iii)   Injunctive relief; and

(iv)    Such other and further relief as this Court deems just and proper under the circumstances.

## COUNT X
## FALSE LIGHT

176.    Dr. Soltes incorporates paragraphs 1 through 99 as though fully stated herein.

177.    Rush falsely communicated to Dr. Soltes' grant donor and to the public that Dr. Soltes had abandoned her research.

178.    Rush falsely communicated to Dr. Soltes' grant donor that she approved the grant funds being transferred to another department.

179.    Rush falsely communicated to Dr. Soltes' patients that Dr. Soltes encouraged them to find new care at Rush.

180.    Rush's falsehoods caused Dr. Soltes significant emotional, monetary, and reputational harm.

181.    Rush's falsehoods are highly offensive.

182.    Upon information and belief, Rush made the falsehoods willfully and with the

22

knowledge that the statements were false.

WHEREFORE, Plaintiff, Dr. Barbara Soltes, respectfully requests that this Court, after a jury trial, enter judgment in her favor and against Defendant Rush University Medical Center, and award damages equal to:

(i)     Compensatory damages;

(ii)    Punitive damages;

(iii)   Injunctive relief; and

(iv)    Such other and further relief as this Court deems just and proper under the circumstances.

Dated:  June 24, 2022                                         Respectfully submitted,


                                                             /s/ Peter M. Katsaros
                                                             Peter M. Katsaros
                                                             Gillian G. Lindsay
                                                             Rashmi D. Shivnani
                                                             HAHN LOESER & PARKS LLP
                                                             200 W. Madison Street, Suite 2700
                                                             Chicago, IL 60606
                                                             (312) 637-3015
                                                             pkatsaros@hahnlaw.com
                                                             glindsay@hahnlaw.com
                                                             rshivnani@hahnlaw.com
                                                             *Attorneys for Dr. Barbara Soltes*

23

13776323.1